ORIGINAL

FILED
JUL 25 2008
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

KLOPPENBURG ENTERPRISES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Case No. 08-540 C

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DECLARATORY JUDGMENT**

John Spencer Stewart
Thomas A. Larkin
Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201-5047
Telephone: (503) 221-0699
Facsimile: (503) 223-5706

Attorney of Record for Kloppenburg Enterprises, Inc.

## TABLE OF CONTENTS


I. ISSUE PRESENTED . . . . . . . . . . 1

II. STATEMENT OF CASE . . . . . . . . . . 1

III. ARGUMENT . . . . . . . . . . 3

A. Jurisdiction and Standard of Review . . . . . . . . . . 3

B. Contrary to the Assertion of the Contracting Officer, Plaintiff's Submission was the best value to the Government . . . . . . . . . . 4

C. Criteria for Injunctive Relief . . . . . . . . . . 12

D. Likelihood of Success on the Merits . . . . . . . . . . 12

E. Plaintiff will Suffer Irreparable Harm if Relief is Not Granted . . . . . . . . . . 13

F. The Balance of Hardships Decidedly Favor Plaintiff . . . . . . . . . . 14

G. Injunctive Relief Will Serve the Public Interest . . . . . . . . . . 15

IV. CONCLUSION . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**

Page

*A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126 (2006) . . . . . . . . . . . . . . . . . . 12

*Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . 4

*Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303 (2000) . . . . . . . . . . . . . . . 12

*CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559 (2004) . . . . . . . . . . . . . . . . . 13

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . 13

*Ellsworth Assoc., Inc. v. United States*, 45 Fed. Cl. 388 (1999) . . . . . . . . . . . . . . . . . 14

*Erinys Iraq Ltd. v. United States*, 78 Fed. Cl. 518 (2007) . . . . . . . . . . . . . . . . . . . . . . 3

*Essex Electro Engineers, Inc. v. United States*, 3 Cl. Ct. 277 (1983) . . . . . . . . . . . . . 13

*Hawaiian Dredging Constr. Co. v. United States*, 59 Fed Cl. 305 (2004) . . . . . . . . . . 13

*Heritage of Am., LLC v. United States*, 77 Fed. Cl. 66 (2007) . . . . . . . . . . . . . . . . . . 13

*Honeywell, Inc. v. United States*, 870 F.2d 644 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . 7

*Isratex, Inc. v. United States*, 25 Cl. Ct. 223 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Magellan Corp. v. United States*, 27 Fed. Cl. 446 (1993) . . . . . . . . . . . . . . . . . . . . . . 12

*Matter of: Flight International Group, Inc.*, 69 Comp. Gen. 741 (U.S. Comp. Gen. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Matter of: Hard Bodies, Inc.*, 1998 U.S. Comp. Gen. LEXIS 232 (U.S. Comp. Gen. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matter of: KIC Development, LLC*, 2007 U.S. Comp. Gen. LEXIS 181 (U.S. Comp. Gen. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Matter of: Ostrom Painting & Sandblasting, Inc.*, 2000 U.S. Comp. Gen. LEXIS 121 (U.S. Comp. Gen. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matter of: United Medical Systems-DE, Inc.*, 2006 U.S. Comp. Gen. LEXIS 198 (U.S. Comp. Gen. 2006) . . . . . . . . . . 11

*PGBA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) . . . . . . . . . . 3

*Precision Images, LLC v. United States*, 79 Fed. Cl. 598 (2007) . . . . . . . . . . 7, 8

*Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705 (2006) . . . . . . . . . . 12, 14

*Rex Serv. Corp. v. United States*, 448 F.3d 1305 ( Fed. Cir. 2006) . . . . . . . . . . 3

*RISC Mgmt. Joint Venture v. United States*, 69 Fed. Cl. 624 (2006) . . . . . . . . . . 6

*Saratoga Dev. Corp. v. United States*, 21 F.3d 445 (D.C. Cir. 1994) . . . . . . . . . . 3

*Statistica, Inc. v. Christopher*, 102 F.3d 1577 (Fed. Cir. 1996) . . . . . . . . . . 13

*TRW Environmental Safety Systems, Inc. v. United States*, 16 Cl. Ct. 516 (1989) . . . . . . . . . . 12, 13

*United Int'l Investigative Serv. v. United States*, 41 Fed. Cl. 312 (1998) . . . . . . . . . . 15

**Federal Statutes & Regulations**

48 C.F.R. ("FAR") § 15.101 . . . . . . . . . . 4, 6, 8

48 C.F.R. ("FAR") § 15.305 . . . . . . . . . . 4, 6, 8

5 U.S.C. § 706 . . . . . . . . . . 3, 4

28 U.S.C. § 1491 . . . . . . . . . . 3, 14

31 U.S.C. § 3551 . . . . . . . . . . 3

Plaintiff, Kloppenburg Enterprises, Inc. ("Kloppenburg"), challenges the decision of the United States ("Government"), acting by and through the United States Department of Defense, Department of Defense Education Activity, DODDS-P/DDESS-G-Procurement Division ("DOD") to award a contract under Solicitation No. HE1260-08-R-8001 to Alutiiq Pacific, LLC ("Alutiiq"). For the reasons provided below, the Plaintiff respectfully requests the Court to enjoin DOD from proceeding with award to or performance of a contract with Alutiiq.

## I. ISSUE PRESENTED

The issue presented is whether the Court should preliminarily restrain DOD and Alutiiq from proceeding under the disputed contract.

## II. STATEMENT OF THE CASE

As represented by the Government in the subject Solicitation, DODDS-P/DDESS-G is composed of four schools located on Guam. Two of the schools (Andersen Elementary School and Andersen Middle School) are located on the northern part of Guam on Andersen Air Force Base for which approximately 504 students require daily commuting services. The other two schools (Guam High School and McCool Elementary/Middle School) are located in the surrounding area of the Naval Base and Naval Hospital located in the Southern part of Guam in which approximately 1,228 students require daily commuting services.

The Government issued Solicitation No. HE1260-08-R-8001 (the "Solicitation") requesting proposals for the furnishing of busing services to DODDS-P/DDESS-G school children on Guam. Specifically, Section 1.2 of the Solicitation provided that "[t]he contractor shall be required to provide and manage a full service student

transportation program for DDESS Guam. The major elements of the services required include: (1) Fleet Management; (2) Route Management; (3) Student Transportation Office Support; and (4) Bus Operations." The Solicitation is attached to the Complaint as Exhibit 1 and incorporated herein by this reference.

The Solicitation stated, at Section M (Solicitation, page 114), that the contract would be awarded on a best value to the Government basis utilizing the lowest price technically acceptable source selection process. The Solicitation required that responsive proposals be submitted no later than April 7, 2008, and was designated as a small business set-aside.

The Government received two offers, including Kloppenburg's offer. The second offer was from Alutiiq. Alutiiq was formed on February 25, 2008 (i.e. after publication of the Solicitation). Accordingly, Alutiiq did not and could not have demonstrated either the technical ability to perform the work identified in the Solicitation or the past performance required by the Solicitation.

On June 11, 2008, the Government notified Kloppenburg by letter that it was awarding the contract under the Solicitation to Alutiiq.

After a debriefing by the Government, Kloppenburg thereafter timely filed a protest with the Government Accountability Office ("GAO") on June 20, 2008. GAO assigned the protest No. B-400283. Kloppenberg supplemented its protest on July 8, 2008. The GAO issued a decision dismissing the protest on July 9, 2008.

/ / /

/ / /

/ / /

## III. ARGUMENT

### A. Jurisdiction and Standard of Review

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)1; *Erinys Iraq Ltd. v. United States*, 78 Fed. Cl. 518 (2007). Section 1491(b)2 explicitly provides that, in any action under 1491(b), "the Court may award any relief that the court considers proper, including declaratory and injunctive relief."

The CICA defines "[t]he term 'interested party,' with respect to a contract or a solicitation or other request for offers . . . [is] an actual or prospective bidder or offeror whose direct economic interest would be effected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); *see also Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (2006). Kloppenburg was one of the offerors with regard to the solicitation. Therefore, it qualified as a prospective offeror on the solicitation and, thus, as an interested party. The Plaintiff has standing to invoke the Court's jurisdiction in this protest.

In evaluating an agency procurement decision, the Administrative Procedure Act, 5 U.S.C. § 706 (the "APA") gives the Court discretion to set aside agency action only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)A; *PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004). Agency action is deemed to be arbitrary or capricious when it lacks any rational basis or is an abuse of discretion. *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994). In addition, agency procurement procedures that are

contrary to applicable laws and regulations violate the APA standard. 5 U.S.C. § 706(2)(A); *Bannum, Inc. v. United States*, 404 F.3d 1346 at 1351 (Fed. Cir. 2005). These standards provide the basis for evaluating the DOD's notice of intent to award a contract to Alutiiq.

### B. Contrary to the Assertion of the Contracting Officer, Plaintiff's Submission was the best value to the Government.

It was an abuse of discretion, and arbitrary and capricious, to award the prospective contract to Alutiiq, for at least the following reasons:

1. Under Solicitation § 52-212-2, 48 C.F.R ("FAR") § 15.101-2 applies to this Solicitation. Under FAR § 15.101-2, when past performance is an evaluation factor, "it shall be evaluated in accordance with [FAR] 15.305 [without the application of 15.305(a)(2)(I)]". FAR § 15.305 (a)(2)(ii) (emphasis added) provides that: "[t]he solicitation shall describe the approach for evaluating past performance, **including evaluating offerors with no relevant performance history . . . ."** The Solicitation makes information regarding past performance a necessary component of a technically acceptable offer. But, the Solicitation nowhere provides any approach for evaluating offerors with no relevant performance history. To the contrary, the Solicitation, § 52.212-1(b) (Solicitation page 108), provides that:

> "**As a minimum, offers must show** – . . . (10) **Past performance information**, when included as an evaluation factor, to include recent and relevant contracts for the same or similar items and other references (including contract numbers, points of contact with telephone numbers and other relevant information). . . ."

(Emphasis added). Similarly, § 52.212-1 Addendum (Solicitation pages 111 - 112), which replaced § 52.212-1(b), provides that:

/ / /

> (B) <u>**Content of Proposals**</u>. A proposal submitted in response to this solicitation ***must*** consist of three separate sections: Technical (Section I); ***Past Performance*** (Section II); and Cost/Price (Section III). The Technical, ***Past Performance***, and Cost/Price sections must be separate, clearly marked with the solicitation number, and must contain sufficient information to permit a detailed evaluation. In order for the government to evaluate proposals, proposals submitted ***must*** contain the information as outlined below:
>
> > <u>**(2) Past Performance (Section II).**</u> The government will use various means when evaluating past performance for each offeror . . . To aid in the evaluation, the offeror ***shall provide*** a list of two (2) Government or commercial customers for whom they have provided similar services, on a similar scale, in the past three (3) years who will provide information about he quality of your relevant past performance.

(Emphasis added). The Solicitation also identified and provided a "Past Performance Questionnaire." The only reasonable reading of these clauses in the Solicitation is that past performance history is a requirement for a technically acceptable offer.

The apparent successful offeror, Alutiiq, was formed on February 25, 2008, just weeks before the Solicitation closed on April 7, 2008. **Exhibit 2 to Complaint**. Clearly, Alutiiq lacks any relevant past performance. Kloppenburg believes that Alutiiq failed to provide any past performance information, and that its bid should therefore have been rejected as non-responsive. Alutiiq wholly lacked one of the three mandatory prerequisites to a responsive offer. Alutiiq wholly failed to comply with the express minimum past performance requirements set forth in the Solicitation, and is non-responsive.

**2.** Kloppenburg provided extensive and exemplary Past Performance information. **Exhibit 7 to Complaint.** Kloppenburg, which is a long-standing and family owned transportation provider, conducts commercial bus operations on Guam,

and currently holds the maintenance contract for the buses serving the DoDEA schools that are the subject of the Solicitation. FAR § 15.101-2(b)(1) provides that when "past performance [is] an evaluation factor," as it is in this Solicitation, "[past performance] shall be evaluated in accordance with 15.305." FAR 15.305(a)(2)(iii) requires that past performance be taken into account. Kloppenburg's outstanding past performance history justifies an award to it, despite that it may have a slightly higher price (which is contested by Kloppenburg as explained in Sections III.B.5, III.B.6 and III.B.8 below). The Government did not take Kloppenburg's outstanding Past Performance into account.

In reviewing an agency's rating of past performance, this court should focus on whether "the evaluation was reasonable, consistent with the stated evaluation criteria, and compliant with relevant statutory and regulatory requirements. *RISC Mgmt. Joint Venture v. United States*, 69 Fed. Cl. 624, 634 (2006) (citing, *JWK Int'l. Corp. v. United States*, 52 Fed. Cl. 650, 659 (2002). The offeror bears the affirmative obligations of ensuring that its response to a Solicitation is complete and of clarifying any concerns that might arise from the Contracting Officer or other procuring authority. *Id.*

Past performance history frequently has justified award to a second low offeror, especially where the spread between bids is small. See, e.g., *RISC Mgmt. Joint* Venture, 69 Fed. Cl. 624 (U.S. Comp. Gen. 2007) (the Court sustained an award to a second low offeror when it had a higher past performance and confidence rating compared with the low offeror's "neutral" rating on past performance); *accord, Matter of:*

*KIC Development, LLC*, 2007 U.S. Comp. Gen. LEXIS 181 (U.S. Comp. Gen. 2007)[1]; *Matter of: Ostrom Painting & Sandblasting, Inc.*, 2000 U.S. Comp. Gen. LEXIS 121 (U.S. Comp. Gen. 2000); *Matter of: Hard Bodies*, Inc., 1998 U.S. Comp. Gen. LEXIS 232 (U.S. Comp. Gen. 1998). In *KIC*, an "acceptable" rating justified paying $85,719 more to the awardee on a $4.5 million contract when the protestor was given a "neutral rating." In *Hard Bodies*, which involved a lowest price technically acceptable source selection process, an "outstanding" rating justified paying $40,000 more to the awardee on a $300,000 contract when the protestor was given a "satisfactory" rating. Therefore, in this case, Kloppenburg's outstanding past performance certainly justifies award despite a mere $170,000 difference on a $12.5 million contract.

If Alutiiq's proposal was acceptable at all [(which it was not, as discussed above)] despite a complete lack of past performance, then favorable consideration of Kloppenburg's outstanding past performance beyond rendering its proposal "acceptable" is necessary to determine the "best value" for the Government sought on Solicitation page 114. On the other hand, if DoDEA intended by the language of the Solicitation ***not*** to consider outstanding past performance as a "plus," that demonstrates that past performance is necessary simply to be acceptable, as indicated in the Solicitation.

Indeed, in *Precision Images, LLC*, 79 Fed. Cl. at 612, the Government endorsed Plaintiff's position that an "Unknown Confidence" [or neutral] past performance rating

---

[1]While Government Accountability Office decisions are not binding on this Court, such decisions are instructive. *Honeywell, Inc. v. United States*, 870 F.2d 644, 647 (Fed. Cir. 1989); *Precision Images, LLC v. United States*, 79 Fed. Cl. 598, 620 (2007).

ranks lower than a "Satisfactory Confidence" rating of past performance. The Court stated that the Government "could properly consider the difference between a higher-priced offeror with a "Satisfactory Confidence" rating over a lower-priced offeror with an "Unknown Confidence" [or neutral] rating on a best value to the Government procurement. *Precision Images*, 79 Fed. Cl. at 625. Although Precision Images involved a tradeoff process source selection process under FAR 15.101-1, the favorable evaluation of actual past performance history applies under the lowest price technically acceptable source selection process which involces past performance as an evaluation criteria under FAR 15.305.

Here, Kloppenburg's stellar past performance demonstrated as one of the evaluation criteria, coupled with a very minimal (if at all as explained in Sections III.B.5, III.B.6 and III.B.8 below) higher price, rendered it the best value to the Government.

**3.** Upon information and belief, Alutiiq lacks any facility whatsoever on Guam through which it could perform the maintenance required to perform the contract. As a result, there could not have been a proper "assessment of [Alutiiq's] ability to accomplish the technical requirements" of the work identified in the Solicitation, as required by FAR 15.305(a)(3)(i) and (ii). Alutiiq lacks the facility and accompanying technical ability to perform the work identified in the Solicitation.

**4.** As indicated in Solicitation § 52.212-2:

> The Government will award a contract resulting from this solicitation to the ***responsible offeror whose offer conforms to the solicitation***. . . . Award will be made on the basis of the lowest evaluated price of proposal ***meeting or exceeding the technical acceptability standards***. ***Technical acceptability, which included [sic] past performance, will be based on an offeror submitting a proposal that demonstrates the***

///

***offeror's ability to comply with all of the requirements listed in the Performance of Work Statement.***

(Emphasis added). As detailed above, Alutiiq could not have submitted an offer that conformed to the Solicitation or that met the technical acceptability standards, based on past performance or otherwise.

**5.** Kloppenburg believes that upon review of Alutiiq's response to the Solicitation (which Kloppenburg requested from the Government, but the Government refused to produce), it will be able to show that once the price of fuel is accounted for, Alutiiq was not the lowest price offeror, if it was a responsive offeror at all (which it was not). Alutiiq's overall price proposal ($12,478,556.20) was approximately $170,000 less than Kloppenburg's price proposal ($12,648,188.32) over the full five year period of performance. Therefore, Kloppenburg's price was higher by approximately 1.36%. That equates to only $2,800 more per month. Assuming that 28 buses were anticipated to be used by either offeror, that equates to $100 more per bus, per month. With fuel cost at $4.00 per gallon, 25 gallons of fuel savings per bus per month accounts for the difference in price. Kloppenburg's proposal included detailed specifications of brand new, fuel efficient busses. **Exhibit 3 to Complaint.** Kloppenburg believes that Alutiiq's proposal does not, and that the difference in apparent price and value to the Government between the two bids weighs in Kloppenburg's favor based on fuel efficiency and the best value to the Government. Also, Kloppenburg's facility is centrally located, which will achieve significant fuel cost savings.

As indicated above, page 114 of the Solicitation states that award will be made to the "offeror whose offer conforms to the solicitation and whose offer represents ***the***

***best value*** to the Government . . . ." That is a clear basis for and requirement that DoDEA consider fuel cost. In the *Matter of: Flight International Group, Inc.*, 69 Comp. Gen. 741 (U.S. Comp Gen. 1990), the GAO sustained a protest when the agency failed to consider fuel costs in determining the best value to the government. The facts of *Flight International* are strikingly similar to those here. The low bidder's offer used fuel-guzzling Sabrejets, while the protestor's offer used new, fuel-efficient Lear jets. Again, the GAO sustained that protest.

In this solicitation, DoDEA is paying for fuel costs. Kloppenburg has proposed providing new, efficient buses, and using a facility equidistant to the two military bases where the schools are located. Both of these factors would lead to significant fuel savings as compared to older buses operated from a less central facility. It is irrational to calculate the best value to the government without considering fuel costs, especially given the current escalation in fuel costs. Saving approximately one gallon per bus per day could eliminate or even exceed the $170,000 total price difference between Kloppenburg and Alutiiq on this $12 million procurement.

**6.** Kloppenburg's price proposal also clearly included Guam's Gross Receipts Tax ("GRT") of $471,909.14 in separate line items. **Exhibit 4 to Complaint.** Kloppenburg believes that Alutiiq's proposal may not properly account for the GRT and, when properly included, would render Kloppenburg's price the lowest priced offer. Alutiiq thus may have gained an unfair advantage by failing to comply with Guam taxation requirements.

Currently pending before Congress is a law that will require the Secretary of Defense to submit "a report on the steps that the Department is taking to ensure that all

contractors of the Department performing work on Guam comply with local tax and licensing requirements." **Exhibit 5 to Complaint**. If Alutiiq's price proposal did not evidence compliance with Guam's GRT, it should be deemed non-responsive. Section 52.212-4(k) of the Solicitation provides: "Taxes. The contract price includes all applicable Federal, State, and local taxes and duties." (Solicitation at 69).

**7.** At a minimum, the bid documents were latently ambiguous regarding the importance of past performance as an evaluation factor. Kloppenburg believes that the solicitation provisions described above unambiguously require a demonstration of Past Performance from all offerors. Because Alutiiq's offer was not deemed non-responsive, the contracting agency improperly ignored the Past Performance requirements set forth in the Solicitation. This latent ambiguity in the Solicitation renders it defective.

**8.** The official award, as shown on-line at www.fbo.gov, is for the base year only. Kloppenburg's price for the base year was approximately $200,000 less than Alutiiq's price. **Exhibit 6 to Complaint**. Kloppenburg clearly has the lowest evaluated price for the base year. The Solicitation makes it clear that only the base year **will** be awarded; extension of services to other years is purely optional. (Solicitation at 72 and 81). Additionally, there is nothing in the Solicitation that indicates that "base and option year prices were to be added to determine a total evaluated price." *Matter of: United Medical Systems-DE, Inc.*, 2006 U.S. Comp. Gen. LEXIS 198 (U.S. Comp. Gen. 2006). The best value for the Government should have been determined based on the base year price, not on adding the base and option years for a total price.

/ / /

/ / /

**C. Criteria for Injunctive Relief**

In order to obtain temporary injunctive relief, the Plaintiff must demonstrate:

(1) It has a likelihood of success on the merits;

(2) That it will suffer irreparable harm if an injunction is not granted;

(3) That the harm to the Plaintiff is an injunction is not granted outweighs the harm to the government if an injunction is granted; and

(4) That granting the injunction is in the public interest.

*See, e.g., Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303 at 320-21 (2000) (citations omitted); *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 132 (2006) (citation omitted). No one factor is dispositive as the "weakness of the showing regarding one factor may be overborne by the strength of the others." *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 709 (2006) (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)).

**D. Likelihood of Success on the Merits**

In considering whether to grant interim injunctive relief pending a final decision on the merits, the Court of Federal Claims has consistently held that the "likelihood of success" is a flexible factor and does not require a certain "mathematical probability." *Magellan Corp. v. United States*, 27 Fed. Cl. 446 (1993); *TRW Environmental Safety Systems, Inc. v. United States*, 16 Cl. Ct. 516 (1989). For purposes of a preliminary injunction, it is sufficient if the Plaintiff can demonstrate either (1) "a combination of probable success on the merits and the possibility of irreparable injury", or (2) "that serious questions are raised and the balance of hardships tips sharply in favor" of the

/ / /

Plaintiff. *Id.* at 527. As demonstrated herein, Plaintiff's request for preliminary injunctive relief meets these standards.

To prevail in a bid protest, a bid protestor must show a significant prejudicial error in the procurement process. *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). In the case at hand, as described above in Section III.B, the Government's award of the contract under the subject solicitation raises serious questions, and Plaintiff has made a showing of probable success on the merits and the possibility of irreparable injury as described below.

**E. Plaintiff will Suffer Irreparable Harm if Relief is Not Granted.**

"A party suffers irreparable harm when there is no adequate remedy at law." *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 575 (2004). Since an offeror cannot sue the government for lost profits, "the harm to Plaintiff is irreparable and that harm satisfies the second criterion for injunctive relief." *Heritage of Am., LLC v. United States*, 77 Fed. Cl. 66, 78 (2007). An action at law only allows recovery of "bid preparation costs in a suit for damages, but not loss of anticipated profits," leaving a bid protestor irreparably harmed. *Essex Electro Engineers, Inc. v. United States*, 3 Cl. Ct. 277, 287 (1983). If lost profits do not constitute irreparable harm, then a protestor that seeks to displace a putative awardee automatically fails to meet one of the requirements for injunctive relief." *Hawaiian Dredging Constr. Co., v. United States*, 59 Fed. Cl. 305, 317 (2004).

/ / /

/ / /

In this case, since Kloppenburg stands to lose profit if Alutiiq is allowed to commence performance under the improperly awarded contract, Kloppenburg has established irreparable harm.

**F. The Balance of Hardships Decidedly Favor Plaintiff.**

Under this factor, "the Court must consider whether the balance of hardships leans in the Plaintiff's favor. This requires a consideration of the harm to the government and to the intervening defendant[s]." *Reilly's Wholesale Produce v. United States,* 73 Fed. Cl. at 715 (2006).

Presumably, the government will argue that delay in commencing the busing services throws the balance of hardship calculation clearly in its favor. But as one Court noted, "only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the Courts would never grant injunctive relief in bid protests." *Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388, 399 (1999).

As discussed above, if Plaintiff's request for injunctive relief is not granted, it will suffer the loss of an opportunity to fairly compete and to earn the profits associated with receiving a contract award, but the Defendant will simply select another offeror to perform the project. The harm to the Plaintiff outweighs any potential harm to DOD. As noted in the Court's General Order No. 38, the "Court's practice is to expedite protest cases to the greatest practical extent," and Plaintiff is prepared to agree to an expedited schedule for resolving this matter. *See* 28 USC § 1491(b)(3) "[i]n exercising jurisdiction under this subsection, the Courts shall give due regard to . . . the need for expeditious resolution of the action"). Given the Court's practice to expedite bid protests, it is unlikely that DOD will suffer irreparable injury during the pendency of this litigation.

### G. Injunctive Relief Will Serve the Public Interest

It is a well settled principle that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring the government to follow its procurement statutes and regulations. *See United Int'l Investigative Servs. v. United States*, 41 Fed. Cl. 312, 323 (1998) (holding that the "public has a strong interest in preserving the integrity of the procurement process"); *Isratex, Inc. v. United States*, 25 Cl. Ct. 223 (1992) (public interests served by requiring the government to "fairly and honestly" consider bids). The public interest is always served when the procurement procedures required by law and regulation are followed.

Issuance of an injunction will serve the public interest by protecting the integrity of the competitive procurement process. The public has an interest in assuring that all bids and proposals in federal procurement are considered fairly. Here, DOD's failure to consider the fuel cost savings, the cost effects of the Guam tax, and the failure to consider Kloppenburg's excellent performance history as opposed to Alutiiq's non-existent performance history violates numerous procurement laws, statutes and regulations and prevents Kloppenburg from competing fairly for the work.

## IV. CONCLUSION

Plaintiff respectfully submits that the requested relief is urgently needed to maintain the status quo until the Court reaches a decision on the merits. Based on the

/ / /

/ / /

/ / /

/ / /

foregoing facts and analysis, Plaintiff respectfully requests that the Court grant its motion.

DATED this 23rd day of July, 2008.

Respectfully submitted,

By:______________________________

John Spencer Stewart
Thomas A. Larkin
Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201-5047
Telephone: (503) 221-0699
Facsimile: (503) 223-5706
Attorney of Record for Kloppenburg Enterprises, Inc.